IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EUGENE BEXLEY,
Plaintiff

VS.   CASE NO: 8:04-CV-980-T-27-MAP

SOLOMON AND SOLOMON P.C.
Defendant
_____/

RESPONSE TO DEFENDANT SOLOMON AND SOLOMON P.C.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
TO RULE 12(b)(6) AND FOR FEES AND COSTS PURSUANT
TO 15 U.S.C. 1692(k)

The defendant Solomon and Solomon, P.C., moves this court to dismiss the complaint of the plaintiff pursuant to Rule 12(b)(6). As pointed out in the defendant's memorandum this court in considering the motion must take all of the material allegations of the complaint as true and construe them in a light most favorable to the non moving party. *Markoviewicz v. North East Land Company*, 906 F.2d 100, 103 (3rd Cir. 1990)

1

The plaintiff would argue that any dispositive motion at this point is premature. No discovery has been answered by the defendant, not even the Rule 26 requirements. The plaintiff is entitled to discovery prior to any dispositive motions being considered by this court. *Miller v. Wolpoff & Abramson* 321 F.3d 292 (2nd Cir. 2003)

The complaint alleges:

1. that Solomon and Solomon, P.C. employed the use of false representations or deceptive means to collect or attempt to collect any debts by leading the least sophisticated consumer to believe that Solomon and Solomon P.C. were attorneys at law in the state of Florida when in fact they are not licensed to practice law in the state of Florida.

2. That there was the false representation of attorney involvement when it is clear from the face of the letter that it is simply a printed form with little or no attorney involvement.

3. The letter implies by stating "we have not received a response despite our previous demands for payment. We strongly urge you to make payment to this office upon receipt of this letter" The paragraph would lead the least

sophisticated consumer to believe that Solomon and Solomon P.C.. could and would file suit against him/her in the state of Florida.

The motion must fail for the following reasons:

Defendants allege in Part A of their legal argument that "Plaintiff's complaint must be dismissed as a matter of law because a collection notice sent by a law firm, which is in all other respects complaint with the FDCPA, does not threaten litigation merely because it is sent on the law firms letterhead."

The complaint does not allege that litigation is threatened merely because the letter is sent on law firm letterhead.

The complaint alleges it is the content of the letter under the letterhead, which, combined with the fact it is sent from a law firm constitutes the threat of litigation when no litigation is intended. The use of the phraseology used in the letter is; "we have not received a response despite our previous demands for payment. We strongly urge you to make payment to this office upon receipt of this letter"

It is obvious that Solomon and Solomon, P.C. are attempting to hit a "panic button". What else could the words,

"strongly urge"

"make payments to this office"

"upon receipt of this letter",

"we have not received a response despite our previous demands for payment" mean coming from a law firm if not litigation.

It is clearly meant to convey a threat of further "strong" action. What "strong" action would a law firm have in mind for "not having received a response?" Is the plaintiff, or more to the point the least sophisticated consumer to believe would be the next step, another letter asking for payment?

It is certainly at least a jury question as to whether the least sophisticated consumer would be led to believe from the language that a law suit was threatened.

Claim B, Solomon and Solomon, P.C. argues Plaintiff's claims that defendant's letter misrepresented that defendant was licensed to practice law in Florida must be dismissed.

Solomon and Solomon, P.C. argues as follows: (1) It is a law firm. (2) They use a law firm letterhead. (3) They have a New York address. On this bases alone they argue that that least sophisticated consumer would know that they were not a law firm licensed to practice in Florida.

4

Exactly how would the least sophisticated consumer know they were not license to practice law in Florida?

They are a law firm.

They are trying to collect a debt in Florida.

They strong urge the sending of payment to them immediately.

They are not to be ignored.

It is at least a jury question as to whether or not the least sophisticated consumer would believe they were a Florida firm who could in fact sue them. Does the least sophisticated consumer know that a law firm with a New York addresses is a New York firm that can not carry out the threat?

The defendant does nothing to discourage impression they are licensed to practice law in Floriday. They do not affirmatively state anywhere on the letter head or in the letter that they are not licensed to practice law in Florida and can not sue anyone in Florida.

They obviously want the recipient of the letter to believe they could.

5

The *Sturdevant* case cited by defendant appears to be the only case holding for the proposition advocated by the defendant. It is not binding on this court.

Defendant's allegation in part C is that plaintiff's complaint must be dismissed as a matter of law because a collection notice sent by a law firm does not falsely represent attorney involvement.

In *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir. 2003) the court said, "The FDCPA creates a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e contains a non-exhaustive list of practices within the purview of this prohibition, including "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." Id. § 1692e(3). Although there is no dispute that W&A and UC&S are law firms, or that the letters sent by those firms were "from" attorneys in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered "from an attorney" within the meaning of the FDCPA. See, e.g., *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) ("[T]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it

6

implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent . . . . [T]he use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent."). Here, plaintiff claims that the letters sent by W&A and UC&S were form letters generated by a computerized debt collection system without any meaningful attorney involvement in the process. Plaintiff also argues that the district court abused its discretion by refusing to allow him to conduct any discovery to enable him to respond to the motions for summary judgment while simultaneously relying on defendants' affidavits to conclude that a meaningful review of the file was conducted by W&A and UC&S. For the reasons that follow, we conclude that the grant of summary judgment on this record was premature."

In **Miller** the court set for the factual background of the case saying: "Plaintiff Arthur Miller entered into a credit card agreement with Lord & Taylor. After Miller refused to pay $1618.14 owed on the card, he received a series of letters from defendants W&A and UC&S in connection with their attempts to collect on the debt.

W&A regularly represents Lord & Taylor on collection matters, and

7

implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent .... [T]he use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent."). Here, plaintiff claims that the letters sent by W&A and UC&S were form letters generated by a computerized debt collection system without any meaningful attorney involvement in the process. Plaintiff also argues that the district court abused its discretion by refusing to allow him to conduct any discovery to enable him to respond to the motions for summary judgment while simultaneously relying on defendants' affidavits to conclude that a meaningful review of the file was conducted by W&A and UC&S. For the reasons that follow, we conclude that the grant of summary judgment on this record was premature."

In **Miller** the court set for the factual background of the case saying: "Plaintiff Arthur Miller entered into a credit card agreement with Lord & Taylor. After Miller refused to pay $1618.14 owed on the card, he received a series of letters from defendants W&A and UC&S in connection with their attempts to collect on the debt.

W&A regularly represents Lord & Taylor on collection matters, and

Lord & Taylor sent the Miller file to W&A for collection assistance. On February 23, 2000, Ronald Abramson, a partner at W&A, reviewed the "file," which contained the following information: Miller's full name, social security number, current address, home and work phone numbers, the Lord & Taylor account number, the date the credit account was opened, the date of the last charge to the account, the date the account was charged off, the account balance, and "a synopsis of [Lord and Taylor's] recent customer service notes regarding their efforts to resolve Mr. Miller's account prior to forwarding the matter to [W&A] for collection." After reviewing this file, Abramson claims he "activated a print command on Wolpoff & Abramson's computer system and W&A's initial collection letter . . . was printed and mailed to the Plaintiff on February 25, 2000."

The February 25, 2000 letter identified W&A as "Attorneys in the Practice of Debt Collection (A National Attorney Network Firm)." The letter demanded payment of "$1618.14 (including applicable contractual charges)," noted that it was sent with regard to May Department Stores/Lord & Taylor, and stated:

Please be advised that we represent the above-named creditor who claims you have a delinquent balance as stated above. After you have read

8

the important notice on the reverse side of this letter, If appropriate please call our office to resolve this matter.

When paying the balance in full or if you are unable to call our office, check one of the options below and return the bottom portion of this letter in the self-addressed envelope provided for your convenience.

Very truly yours,


WOLPOFF & ABRAMSON, L.L.P.

At the bottom of the letter was a "detach and return" section listing four options with boxes for the consumer to check:

[] I mailed a check on _____

[] Here is payment in full made payable to the

creditor. Thanks for waiting.

(If paying by Western Union Quick Collect, for your convenience please see payment instructions on reverse side.)

[] Enclosed is payment in full made payable to the creditor, but it's post-dated a few days.

(Not applicable for residents of Massachusetts.)

[] I cannot call you during the day.

Please have someone call me.

9

My telephone number during the day is _____

My telephone number in the evening is _____

***This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose.***

* * * BEFORE RESPONDING TO THIS LETTER * * *

SEE REVERSE SIDE FOR IMPORTANT NOTICE

On the back of the letter, in larger print than the text on the front of the letter, the following notice was printed:

* * * IMPORTANT NOTICE * * *

You are entitled to certain information that sets forth your rights and our obligations under the law. The law provides that: (a) Within five (5) days after the initial communication with a consumer in connection with the collection of any debt, we shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) unless a

consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office, (4) if the consumer notifies this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, this office will obtain verification and a copy of such verification will be mailed to the consumer by this office, and (5) upon the consumer's written request within the thirty day period, this office will provide the consumer with the name and address of the original creditor if different from the current creditor. (b) If the consumer notifies this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, we shall cease collection of the debt, or any disputed portion thereof, until this office obtains verification of the debt or the name and address of the original creditor, and a copy of such verification, or name and address of the original creditor, is mailed to the consumer by this office. (c) The failure of a consumer to dispute the validity of a debt under the section may not be construed by any court as an admission of liability by the consumer.

This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose.

  On April 26, 2000, Miller was sent a second letter, also on W&A

11

letterhead, informing him that: All attempts to contact you concerning the above account have proven to be unsuccessful. It is important that you call us at 301-961-7620, or toll free at 1-800-678-7720 to discuss this matter. We are pleased to inform you that if you call our office within ten (10) days from the date of this letter, YOU MAY QUALIFY FOR A LARGE DISCOUNT ON THE ABOVE MATTER.

This is a limited time offer only; you must contact our office within this ten (10) day period. The letter included a "payment coupon" portion to detach and return with payment. On May 31, 2000, W&A sent a third letter advising Miller that "[o]ur client has authorized this office to make an extraordinary offer to settle your past-due account with them. We have been permitted to accept$1294.51, which represents 80% of the outstanding balance as settlement in full of your obligation." The letter informed Miller that he had until June 28, 2000 to make a lump sum payment in full, and advised him that if he could not make the entire payment by that date, "please call our office and we will be happy to make reasonable payment arrangements with you on the balance." The letter also instructed that any check or money order should be made payable to the client but sent to W&A's office with the enclosed payment coupon.

Plaintiff did not respond to any of these letters, and on July 12,

2000, plaintiff's file was referred through NAN to UC&S with instructions to initiate litigation promptly. On July 18, 2000, UC&S sent plaintiff a letter demanding payment of $1676.69, and stating in pertinent part: "Please be advised that we are the attorneys for the above creditor. The above referenced account has been forwarded to us for collection. Please contact this office to arrange for payment." This letter, unlike the first three W&A letters, was hand-signed by Mitchell G. Slamowitz, Esq. On August 25, 2000, Attorney Slamowitz filed a verified complaint in Queens County court seeking recovery of $1618.14 and attorneys' fees of $323.63 for Miller's alleged breach of the credit card agreement with Lord & Taylor. Slamowitz claims that he determined that the underlying credit card agreement authorized payment of attorneys' fees before he filed the complaint.

According to plaintiff, under the agreement between NAN and UC&S, NAN would have been entitled to 3% of any amount ultimately collected by Lord & Taylor as a result of the litigation.[fn2]

II. Proceedings Below

On February 23, 2001, Miller filed suit against W&A, UC&S and NAN, alleging that defendants, individually and as joint-venturers and co-conspirators, violated the FDCPA (1) by sending debt collection

13

letters on attorney letterhead without meaningful review by any attorney of the circumstances surrounding plaintiff's alleged debt, (2) by attempting to collect attorneys' fees that were to be shared with NAN as a referral fee in violation of state professional ethics rules, and (3) by mailing a letter that would confuse the "least sophisticated consumer" as to his or her rights. Plaintiff brought these claims as a putative class action.

Three months later, before any discovery was conducted, defendants moved to dismiss or alternatively for summary judgment. The motions relied in part on affidavits submitted by Ronald Abramson, Jay Scheiner, Laurence C. Abramson, Ronald S. Canter, and Mitchell Slamowitz, attorneys at W&A and UC&S involved with sending the debt collection letters and initiating the state court proceeding against Miller. Plaintiff filed a responsive letter motion on June 20, 2001, seeking denial of the motions without prejudice under Fed.R.Civ.P. 56(f), or alternatively, either an expedited discovery schedule or modification of the briefing schedule to permit him time to conduct discovery, including deposing the attorney affiants, before responding to the motions. The letter explained that notwithstanding defendants' reliance on affidavits supporting the motions for summary judgment, "[d]efendants are resisting our efforts to obtain

14

depositions from those affiants that they are using in their motion papers." On July 3, 2001, the district court denied plaintiff's motion and advised that "[t]o the extent the plaintiff wishes to seek relief under Rule 56(f), he should do so in his formal opposition to the pending motions, in a manner compliant with the Rule's requirements." The district court did not address the alternate relief sought by plaintiff. Consistent with this order, plaintiff submitted a Rule 56(f) affidavit from his counsel in opposition to summary judgment detailing the areas where discovery was sought and explaining that defendants had resisted discovery and, as a result, that no discovery had been taken to date."

In *Neilsen v. Dickerson,* 307 F.3d 623 (7th Cir. 2002) the Seventh Circuit dealt with a similar issue and determined that "form letters" that simply crank out collection letters under attorney letterheads without any meaningful attorney involvement do in fact violate the FDCPA.

In Solomon and Solomon, P.C.'s letter, they do not even bother to sign the letter with a facsimile signature. It is just a simple form letter and a violation of the FDCPA and the FCCPA.

As *Miller* holds it is premature to grant a motion such as has been filed by Solomon and Solomon, P.C. until discovery has been had to

15

determine the level of involvement, if any, of attorneys in this and every other case were this form letter was sent out.

**Neilsen** holds form letters under attorney letter head violates the FDCPA and FCCPA. A review of the letter from Solomon and Solomon P.C. is simply a form letter sent under an attorney letterhead. The letter itself is a virtually a violation on its face. The plaintiff is entitled to take depositions to determine how much attorney involvement there was in the sending out of this letter and all the other similar letters sent out by Solomon and Solomon, P.C.

The case law and facts dictate the motion should be denied.

## CERTIFICATE OF SERVICE

**I HEREBY A CERTIFY** that a true and correct copy of the foregoing has been sent by regular United States Mail this 30th day of June 2004 to Dale T. Gordon, Esq. 201 E. Kennedy Blvd. Suite 1100, Tampa, Florida, 33602-5864.

Frederick W. Vollrath, Esq.
Attorney for Plaintiff
Tampa, Florida, 33679
813-335-4379
fredvollrath@aol.com
FBN: 165-812

16

# DOCUMENT, ATTACHMENTS, OR EXHIBITS NOT SCANNED

## FOR THE FOLLOWING REASON(S):

- ____ PHYSICAL SIZE OF PAPER (LARGER OR SMALLER THAN 8 ½ X 11)
- ____ EXCEEDS PAGE LIMIT
- ____ DOUBLE-SIDED PAGES
- ____ BINDING CANNOT BE REMOVED WITHOUT DAMAGING DOCUMENT
- _X_ CASE LAW
- ____ SOCIAL SECURITY RECORD/ANSWER
- ____ DEPOSITION/TRANSCRIPT
- ____ NON-REMOVABLE EXHIBIT TABS
- ____ COLORED PAPER OR COPIED PHOTOGRAPHS
- ____ SEALED
- ____ OTHER ____________________

# PLEASE REFER TO COURT FILE FOR COMPLETE DOCUMENT